UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA ex rel.**  **CIVIL ACTION**
**ALBERT BRUNO and ALEX STRAHAN**

**VERSUS**
  **NO. 16-1-BAJ-RLB**
**BRAD SCHAEFFER, ET AL.**

## ORDER

Before the Court is the Motion to Clarify, or Alternatively, to Modify Protective Order (R. Doc. 127) filed by Relators on March 5, 2020. (R. Doc. 127). The MedComp Defendants and Quantum Defendants filed separate Oppositions on March 25, 2010. (R. Docs. 128 and 129). Relators filed a Reply on April 22, 2020. (R. Doc. 134).

This action was initiated as a *qui tam* action under the False Claims Act pursuant to 31 U.S.C. § 3729, *et seq.*, by Relators on January 5, 2016. (R. Doc. 1). The United States Government declined to intervene in the action on April 25, 2018. (R. Doc. 53). The Court entered into the record the Agreed Confidentiality and Protective Order (R. Doc. 93-1) on June 13, 2019.

Relators request permission from the Court to disseminate discovery documents marked confidential in this *qui tam* action to counsel for or agents of the United States, either through clarification or modification of the existing Agreed Confidentiality and Protective Order (R. Doc. 93). In support of this request, Relators suggest that the United States is a real party in interest in this litigation, and as a "party" it is entitled to receive such documents obtained through discovery under the terms of the protective order. (R. Doc. 127 at 4-7). In the alternative, Relators request that the protective order be modified to permit such transfer of documents to the United States.

The MedComp Defendants respond that, having declined to intervene in the action, the United States is not a real party in interest entitled to civil discovery documents, and that the allowance for deposition transcripts in 31 U.S.C. § 3730 would be rendered unnecessary by such a holding. (R. Doc. 128 at 4-7). The Quantum Defendants respond in Opposition that allowing Relators to provide discovery documents to the United States would deprive Defendants of their rights under the U.S. Constitution, that Relators have failed to establish good cause for modification of the Protective Order, and that Relators should not be permitted to "use the specter of a criminal proceeding as a litigation tactic in this civil litigation." (R. Doc. 129 at 1).

Relators argue in Reply that, in part supported by the right to approve or veto any settlement under the False Claims Act, the United States is necessarily a real party in interest entitled to discovery. (R. Doc. 134 at 4). Relators also suggest that allowing the United States to access the discovery would not erode the principle purpose of the Protective Order, which was to protect health information as required by HIPAA. (R. Doc. 134 at 4-5).[1]

The Protective Order in this matter was based on a stipulated agreement between the parties. (R. Docs. 90, 93). Nothing in the record indicates how the United States was intended to be treated with respect to confidential information under the terms of that agreement. The agreement specifically states that it is between "the parties listed and signing below" (R. Doc. 90 at 1), and it is signed by counsel for the Plaintiff-Relators, the MedComp Defendants and the Quantum Defendants. (R. Doc. 90 at 6-7). The Protective Order then contains various references to the designation and handling of confidential information by the "parties." (R. Doc. 90). The

---

[1] While Relators suggest that the principle purpose of the Protective Order was to protect health information as required by HIPAA, the Court notes that the Protective Order, as submitted and agreed to by the parties, defines "Confidential Information as "documents and other material entitled to confidential treatment under existing statutory or jurisprudential law," and lists as examples both trade secrets and protected health information. (R. Doc. 93-1 at 1).

terms of the agreement do not include the United States as a party for purposes of the Protective Order. *See U.S. ex rel Vaughn v. United Biologics, L.L.C.,* 907 F.3d 187, 193 (5th Cir. 2018) (explaining that "although the non-intervening government has both an independent and derivative presence in a *qui tam* lawsuit regardless of whether it chooses to intervene, treating the non-intervening Government as a 'party' is inappropriate.")

At the same time, the Court was not asked, and did not decide, whether the United States should be precluded from receiving such confidential information – it simply was not part of any analysis or briefing by the parties. In addition, the Protective Order itself specifically provides that disclosures of confidential information may occur simply upon further order of the Court.

The question, therefore, is whether the United States, in a *qui tam* action brought under the False Claims Act in which the United States declined to intervene, may be provided discovery documents from the Relator(s) for the express purpose of a related criminal investigation. For the reasons set forth below, the Court holds that it is so entitled and will amend the protective order in place to permit such disclosure.

In *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997), the Fifth Circuit stated that "the United States is a real party in interest even if it does not control the False Claims Act suit," and went on to hold that the United States had the right and standing to appeal a district court's approval of a settlement in a False Claims Act suit where it did not intervene, in part based upon its status as a real party in interest as well as the statutory provision granting the United States the power to withhold consent to voluntary settlements even where it does not intervene.

Although the holding in *Searcy* does not concern the situation at hand here, it and the Fifth Circuit's opinion in *Vaughn* are instructive in setting forth the unique role of the United

3

States in a *qui tam* action, even when it declines to intervene. "In this capacity, the relator stands in the place of the Government, representing its interests." *Vaughn*, 907 F.3d at 192. "Even when the Government declines to intervene, it remains a distinct entity in the *qui tam* litigation with protected interests. This fact is established by the FCA itself, which affords the Government certain rights in the litigation regardless of its decision not to intervene." *Id*. at 193 (citing various statutory rights of the United States).[2]

With this framework in mind, we look to other courts that have addressed the current issue. In *U.S. ex rel. Stewart v. Louisiana Clinic*, 2002 WL 31819130, at *7 (E.D. La. Dec. 12, 2002), like the instant matter, the issue was "whether the United States [which had declined to intervene] is entitled to receive copies of the documents produced and, if so, whether those documents should be in unredacted form and whether the United States should be prohibited from using the documents for purposes other than this litigation." The court concluded both that the United States was entitled to receive copies of the documents produced in discovery and was entitled to those documents in unredacted form.

In so holding, the *Stewart* court relied on several points. First, the court noted that, even without intervening, the government retained control over certain aspects of the litigation, including the right to veto settlements, the right to intervene at a later date with good cause if beyond 60 days, certain appellate rights and access to documents, and the right to the larger share of any recovery. *Id*. Second, the *Stewart* court noted that "[s]ome district courts have also

---

[2] One such right includes that the United States is to be supplied with "all pleadings filed in the action" and "copies of all deposition transcripts." 31 U.S.C. §3730(c)(3). The MedComp defendants suggest that to allow the United States all discovery would render this provision meaningless. The Court disagrees and notes that nothing in this provision prevents providing the United States with more than what is required. Indeed, this provision suggests that to the extent the current protective order <u>precludes</u> providing discovery to the United States (such as depositions with confidential material), that would violate this statutory provision.

4

recognized the existence of a joint prosecutorial or common interest privilege, as to documents protected by the attorney-client privilege and work product doctrine, between the qui tam relators and the government with respect to documents that are shared between them." *Id.* at *9. Lastly, and perhaps most significantly, the *Stewart* court acknowledged and discussed the role and interest of the United States government in health oversight, citing the HIPAA Standards that permit such disclosures pursuant to 45 C.F.R. § 164.512(d)(1). *Id.* at *9-10. Based on these considerations, the *Stewart* court held "that the United States may use any information it obtains through discovery in this action in connection with its legitimate governmental health oversight activities, and not solely for purposes of this litigation." *Stewart*, 31819130 at *10.

In *U.S. ex rel. Kaplan v. Metro. Ambulance & First-Aid Corp.*, 395 F. Supp. 2d 1, 5 (E.D.N.Y. 2005), the court permitted the government use of discovery documents beyond the *qui tam* litigation itself, noting that the comments relevant to 45 C.F.R. § 164.512(d)(1) advised that "we intend for investigations regarding issues (a) through (c) above to mean investigations of health care fraud," and summarized that "Defendants are being investigated for allegedly defrauding the federal government by falsifying documents to obtain reimbursement for ambulance transportation services it provided to Medicare patients."

The *Stewart* and *Kaplan* cases, though not controlling, are particularly instructive, and the Court agrees with the holdings therein. The parties agree that the criminal investigation arises out of the same allegations brought in this *qui tam* action, i.e., that Defendants participated in a scheme in violation of the False Claims Act, whereby physicians invested in and received compensation from POLs in proportion to urine specimens sent for analysis to Defendant MedComp Sciences, LLC for Medicare or Medicaid covered patients, and Defendant Quantum Laboratories, LLC for patients covered by private insurance, and that this scheme defrauded the

5

United States out of millions of dollars by providing illegal kickbacks to physicians that caused false and/or fraudulent claims to be submitted, and the overutilization of services.

The allegations in this *qui tam* case and the parties' representations as to the nature of the criminal investigation all implicate fraudulent activity against the United States.  The United States is a real party in interest in this action and it may obtain documents discovered in this action in the furtherance of its legitimate health care oversight function.[3]  Accordingly,

**IT IS ORDERED** that the Relators' Motion to Clarify, or Alternatively, to Modify Protective Order (R. Doc. 127) is **GRANTED** and the requested disclosures may be made to the United States' attorneys and/or federal investigators conducting the criminal investigation in this matter.

Signed in Baton Rouge, Louisiana, on April 28, 2020.

                                          **RICHARD L. BOURGEOIS, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**

---

[3] The defendants also argue that the request by the Relators to share this discovery with the United States further supports their request that this civil proceeding be stayed. The Court has granted the motions for a stay of this proceeding by separate order.